May I proceed, Your Honor? Yes, please. May it please the court, I'm Paul Hoffman representing plaintiff Cindy Orellana in this appeal. It makes no sense for Ms. Orellana's claim that she was arrested for serious drug charges, including a felony, without probable cause to turn on the question of whether she made an illegal left turn. Is that what the Supreme Court allows officers to do? No, I don't think that that's the case, Your Honor, in terms of how Atwater, Devenpeck, and Moore come together and that's what the District Court obviously decided. And the case I think that reflects our theory of this case best and which is actually the closest factually to what happened here is the Courtney v. Oklahoma case, which is a Tenth Circuit case. So you're asking us to adopt a rationale from a different circuit? You don't have a Ninth Circuit case that can support your position? Well, the Ninth Circuit is not, from our standpoint, the Ninth Circuit has not decided this question and I can say more about that, but what we're suggesting is that Courtney v. Oklahoma actually did decide precisely this case and it did so a few days after the verdict in this case, so the District Court had no access to Courtney v. Oklahoma. Of course the District Court is not bound by Courtney v. Oklahoma. No, but the Court was struggling. I think the idea that failing to make a safe left turn would prevent someone from having a decision on their wrongful arrest for drug claims was counterintuitive, to say the least, and then decided, as Your Honor suggested, that the Supreme Court cases required that. What Courtney does is say, no, that when you're talking about a traffic infraction, one where the and factually that happened here, that you can't use the hypothetical possibility that somebody might have been able to arrest somebody for a traffic infraction even though that arrest would violate state law and there was no intention to do it and it didn't happen. Even if we agree with your theory, had the citation been issued already in this case before the arrest was made? Well, I have two points to that. Actually, our position is that it had been issued in the sense that the citation was completed, the officer testified at trial, that the citation had been completed, it had been explained to Ms. Ariana, Ms. Ariana had signed it. Had it been physically given to her? Yes, she signed it and it was explained to her. I thought the court found that the citation had not been given to her. I don't think the court made that finding. I'll double check. And the second point on that though is that I'm not sure that it actually matters and I think that the reason, and Courtney, what it says, and Courtney by the way is based on a line of Supreme Court authority and we submitted a Rule 28 letter on Rodriguez v. United States which is part of that authority which also says you can't use the argument that you might have arrested somebody for a traffic offense to justify keeping someone at a traffic stop longer or arresting them for a more... Did you raise the claim below that the stop was unlawfully prolonged? No, I think that the claim was that there was no probable cause. And so, and Courtney... So what does Rodriguez v. United States have to do with this case? Well, I think what Rodriguez says is that you can't, I mean, what the argument was in Rodriguez and what Justice Thomas's dissent basically said is look, under Atwater and all these other cases, he could have arrested the person and so the search incident should be upheld. You don't need any additional probable cause. And what the court is saying, as it had said previously in Knowles v. Iowa, was saying that no, you can't do that. If you've given somebody a citation, you have to justify every additional intrusion and additional intrusion includes arresting them for a more serious offense, which is what our claim is in this case. I have a certain amount of sympathy with your argument, but I just run into Virginia v. Morris just a boulder in the path of your law concurrence. And he says, we conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution. And while states are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protection. Well, but in Virginia v. Moore, the officer actually did arrest the person. And the question there, the argument there was because of Virginia law, the search incident afterwards, which led to the drugs, should be wiped out. So they were dealing with an actual arrest, not a hypothetical arrest. What the problem, I think, in identifying the main problem with how these cases were put together to vastly expand what their meaning is, is Devon Peck, really. Because Devon Peck is the case that says, even though they arrested somebody for a particular offense for which there wasn't any probable cause, that what the court should do is look to see whether there was probable cause for other offenses. Those other offenses in Devon Peck were more serious offenses. Felony impersonation of an officer. They were also offenses that the officers actually were considering on the scene. They weren't just hypothetical. They actually were considered, and they just decided to arrest them for something different. And what Devon Peck, and the Ninth Circuit had had a rule that said, you don't look at those other offenses if they're not closely related. Devon Peck says, no, that's not an appropriate rule. You should take a look at the situation. If they could have arrested him for the misdemeanor and the felony, well, then there's probable cause for that arrest. They did not say, and I think it's really important in Devon Peck, there was a traffic infraction in Devon Peck. They didn't say, well, they could have arrested him for the traffic infraction. In fact, when they sent the remand back, they sent it back on the two, on the felony and the misdemeanor, to decide if there was probable cause to justify the arrest. They didn't say it was justified. They said it had to be dealt with. They did not even talk about the traffic infraction. And there's no case that we're aware of that says that you can justify an arrest for cocaine possession and being under the influence because an officer might have, even though she hadn't, arrest somebody for any traffic infraction, for busted light, for tinted windows. I mean, what kind of rule would that be? So the way that you distinguish Virginia versus Moore is that if the officer in this case had placed your client under arrest, actually placed your client under arrest for making an illegal left turn, which was contrary to state law, and then pursuant to that arrest had conducted a search of your client and found the cocaine, the lawyer under Virginia versus Moore would have been able to proceed to arrest your client for the drug offense. The difference is that you say, the difference is that in this case you didn't actually place your client under arrest for the offense. Well, there are two things really. One is, yes, what you've just said is our position is that once the officer has in fact cited somebody and that traffic violation has been and it had to be independent and therefore the traffic violation should have not been included in jury instruction number 18 because, I'm sorry, I have one, there's an additional point though and this is a broader response and that is that Atwater doesn't talk about traffic infractions or minor infractions, it talks about misdemeanors and the history that it deals with is the long history of being able to arrest for misdemeanors or felonies obviously and Virginia versus Moore deals with a misdemeanor. It was driving under a suspended license in Virginia was a misdemeanor and it happened to be that Virginia law said for that particular misdemeanor there wasn't a custodial arrest. I think what makes it really hard for your case is the suggestion in Atwater and Moore that it doesn't matter how states characterize it for probable cause of Fourth Amendment purposes, it doesn't really matter whether the state makes it an arrestable offense or gives the officer discretion to arrest or cite. How do you get around that language? I mean that's only if you, I mean it's only if you reject the idea that Devenbeck doesn't allow you to hypothesize any traffic violation to justify a subsequent arrest for a more serious crime. I mean that is our primary position. But there was, it wasn't hypothesized was it? There was an actual citation. There was no arrest. In fact she had decided not to arrest her. She had given her a citation. She had resolved the traffic violation which is exactly what happened in Courtney. In Courtney the guy was given a citation for driving on the shoulder of a highway at 1.30 in the morning and he was given a warning. And then the officer continued to question him and decided to arrest him for having a firearm with a prior felony. Would you disagree with the statement that your client was confronted with a cocaine at the same time she was signing the citation? Right around the same time. She says she signed, her testimony is that she signed the citation and saw out of the corner of her eye. She was signing the. Yeah, I mean she was. Hadn't completed it right? Well I mean I, you know. I'm just curious because you said it was, everything was completed and if she was in the process of signing it when she was confronted it wasn't necessary. Well I think she signed it and then was confronted. I mean I don't, that's the fair reading of her testimony that she signed the citation. And there's no, I don't think there's any dispute, there's no dispute that the officer was thinking of arresting her for this. I mean she cited her and that's what, and of course she would cite her because under California law you can't arrest her. There's no officer in their right mind that's going to arrest somebody for. So you're saying whether or not you can arrest or whether or not there's probable cause to believe that an offense, however minor you think it is, has occurred. Well what I'm suggesting is that Devon Peck doesn't say that. And there's no case that I'm aware of that says that you can hypothesize any traffic infraction. Because that's really what you're talking about. It's not just a left turn or a rolling stop. It could be a busted headlight, it could be a tinted window, it could be a crack in your windshield. Hypothesize is what, what are you saying when you say hypothesize? Are you saying that the officer is making up the traffic infraction? No, it's a hypothetical arrest. In other words what you're saying is you can justify anything, even an arrest without probable cause for murder by saying, well you know, they could have arrested her for a crack in the windshield. So we don't get to that question of serious governmental abuse. We don't get to the idea, did she plant this cocaine on her? We don't get to the idea that she actually had four people in the back and in her report only put one and therefore was able to have a better chance for probable cause than her. You don't get to those issues. The jury's never asked that. The jury's asked, did she make a wrong left turn? And there's no case that says that you can hypothesize what would have been an unlawful arrest that didn't actually happen to justify not letting this jury decide whether this officer arrested her without probable cause. There's no case that justifies that. And Atwater, had she arrested her, I agree, we would have had to deal with the problem that Your Honor raised. But what Courtney basically says and what Rodriguez says is once you've dealt with a traffic violation and it really isn't an issue about is it going to be an arrest, there's no arrest. We know there's no arrest. But what if under California law, failing to signal when you make a left turn is clearly an arrestable offense? But it just happens that in this case there was a more serious offense for which she could have been arrested, namely the possession of narcotics. That probable cause later falls by the wayside. Doesn't the fact that the officer could have arrested her for failing to turn a signal at that point support the lawfulness of the arrest? I think there would be a different question if California defined the traffic event as a misdemeanor and as something that you could arrest somebody for. I think that the legal analysis would be different if that was the case. But it's not the case. Right, so I think that gets back to my question of what about the Supreme Court apparently saying that the way California or any other state defines these offenses as arrestable or not really makes no difference in the probable cause analysis? Well that's not exactly what they've said I think. I think in Atwater they've said it doesn't matter how they define it, although they were dealing with misdemeanors only. They weren't dealing with infractions. And we've cited a bunch of cases that draw the line in infractions, Bostick, other cases that we've cited, where the courts have said no, no, they weren't talking about minor traffic violations when they were making these decisions and they might make them differently if they really focused on that. They were dealing with misdemeanors. They were dealing with misdemeanors for which there could be jail time and not hypothesizing it. And in Devon Peck, the rationale for saying that you should look to the other offenses is that it's not, you don't want to impose on the officer on the scene the judgment about which of these three crimes he's going to arrest for, right? And it turns out that one of them there's no probable cause and there might be on the other two. That's vastly different from saying that you should think about anything that the officer might have done with a traffic violation and if there's any traffic violation he gets a free pass. All right, counsel, you've exceeded your time. Let's hear from the government. Your Honors, may it please the court, my name is James Jardine. I'm the attorney for Deputy Felix on this matter. Unless the panel has some specific questions they'd like me to respond to, there were a few items that I wanted to address. Does it matter that Atwater and Moore involved misdemeanors and these are just very minor infractions under California law? It doesn't, Your Honor. I appreciate the question. I believe what Atwater and Moore are addressing are the facts that in determining whether or not there's been a Fourth Amendment violation, the federal courts are looking at this on a national scope. They are not descending down into the intricacies of state law. And while state law does define the elements of the offense to determine probable cause, the one aspect of state law that the courts consistently refuse to look at, the Supreme Court in particular, is what potential penalty may be imposed for that violation of state law. And thus it's irrelevant whether the penalty, whether the potential is for a fine or whether it's for confinement. The sole issue addressed is whether or not there's probable cause to detain or to arrest and that's what we have here. Isn't the distinction really between whether somebody was actually arrested? In other words, if you arrest someone without probable cause or if you arrest someone in violation of state law, that violation of state law for Fourth Amendment purposes is enough. It is not going to lead to a finding that you violated the Fourth Amendment. But here there was no arrest. The person, the officer had decided not to arrest the plaintiff in this case. And how can you, I don't know of any case that says you just hypothecate the possibility that he might have arrested somebody and that hypothetical possibility is enough to insulate the officer from any subsequent Fourth Amendment challenge. What case says that? I understand what you're saying, Your Honor, and I will concede that there is no case that suggests there was an arrest in this situation either at the Supreme Court level or in this circuit. But what I think is instructive in looking at Moore, which renders it I think very different from this situation, in Moore I think that there is even more concern about the result there because the fact is there was in effect an overdetention and arrest and then the subsequent discovery of additional evidence which supported a more serious charge and that's not the situation that we have here. I think one thing that's very important to note here, if below plaintiff did attempt to present a claim for overdetention related to the traffic stop, arguing that in fact it had terminated and that anything that happened after presentation of the citation was going to be constitutionally impermissible and that was put in their contention, their memorandum of contentions of fact and law and we've provided that to the court in our supplemental excerpts of record at page 815. The district court rejected that contention and plaintiffs were not permitted to argue an overdetention. So that's not an issue here in this case. In other words... We're not really worried about overdetention. Their claim is we want to be able to make a pitch to the jury that this was a setup. The drugs were planted and we want to be able to get to the jury on the fact that that was a false arrest. Judge Morrow said no, the there was a violation on the left-hand turn in running the stop sign. If you find that the person could have arrested her, although they didn't, and the fact that they could have arrested her eliminates any opportunity you have to argue to the jury that the arrest for the drug possession violated the Fourth Amendment. And I don't see any Supreme Court case or any Ninth Circuit law which says that a hypothetical possibility of arresting somebody when no arrest actually occurred is enough to give the officer that kind of constitutional insulation. I understand what you're saying, Your Honor. I think what's helpful here is to look at one other jury instruction that is at issue in the case, although it's not been raised as a basis for the appeal, and that's the instruction on malicious prosecution. And if we look at the jury verdict and we look at the evidence submitted in the record and we make conclusions about what the jury must have decided in addressing the claim for malicious prosecution, the jury did not believe that any evidence had been fabricated. And the specific elements on the malicious prosecution instruction that I'm referring to are element 3, which addresses whether or not any reasonable person could have believed that there had been a violation for a narcotics infraction, and then also item 4, which refers to the Ms. Orellana's race. And if we look at the evidence that's been submitted with respect to all of these factors, factors 1, 2, 5, and 6, it's undisputed that the jury would have to have found for Ms. Orellana on those facts because they were in effect conceded. The only things that were truly at issue were 3 and 4. On the issue of equal protection, the only direct evidence that was offered in relation to that came from Ms. Orellana, and these were comments to the effect of that Deputy Felix had made a racially motivated statement with respect to the race of a different suspect, whom she referred to as a paisa. This is Ms. Orellana's testimony, and also further evidence that was offered by Ms. Orellana that Deputy Felix's conduct was, that it was obnoxious, that it was confrontational, that it was improper, that there were several inappropriate references to her being a tweaker, in other So the only, the only way that this jury could have found that there was no malicious prosecution, it could not have believed that Deputy Felix planted that evidence. The jury had to come to that conclusion. And I think that really separates this case and kind of defines it from the concerns that might otherwise exist before this court. And as I was saying... What was the jury's conclusion versus reliance on the jury instruction that says essentially even if you find that there was no probable cause for the drug offense, you could still arrest or if the officer had probable cause for these infections. In other words, the jury could have accepted the planting evidence theory and could have just thrown that out and assumed that the officer basically violated her rights with regard to the drugs. But given the instruction that probable cause could still be supported by these minor traffic infractions, they thought they had to return a verdict in the defense favor anyway. So how do we know that that wasn't the case? Because Your Honor, the, in addition to the six elements that are laid out on the malicious prosecution instruction, there's specific language telling the jury that if it finds that Deputy Felix manufactured or fabricated evidence which was then presented to the prosecutor in support of the criminal charges, that that would support a finding that there was no reasonable basis and that's included within the text of that instruction. So you're saying that the error that the district court made with regard to the instruction on false arrest was rendered harmless by the fact that if you look at the malicious prosecution count, we can only draw the conclusion that they wouldn't have found an adequate factual basis for the false arrest claim. I would agree with that, but Your Honor... That sounds kind of speculative to me. Are you conceding that there was instructional error on the false arrest? I'm not, Your Honor. That was a predicate for his question. Right. I'm not, Your Honor. He seems to be saying that even if we found that, we would still have to, even if we found that there was instructional error, we would still have to affirm because the verdict in the malicious prosecution count would show that they were not going to be persuaded on the merits of the false arrest claim. That is correct, Your Honor, and we are not conceding that there was instructional error. We believe that Moore is very clear, and I think as I was stating before, this is driven by very wide-ranging policy concerns with how the Fourth Amendment is going to be applied across 50 different states within this nation, and for that reason, the Supreme Court has declined to descend into determining whether or not the penalty at issue is going to drive a determination of probable cause. I don't want to beat a dead horse, but the Supreme Court has drawn a line pretty clearly about the arrest has to have happened. If the officer makes an incorrect arrest under state law, that arrest is not going to be validated for purposes of Fourth Amendment. When there is an arrest, there was no arrest here. For me, that's a bright-line difference between Moore and the facts that we have in this case. Your Honor, I think, I don't know that I would agree with the term arrest. I think the more appropriate term would be the detention, whether or not the detention was proper, and in here, there's been no argument that the detention was improper. The sole question that's been presented is whether or not Deputy Felix could have made a decision under state law to confine for that violation or not. But what Moore tells us is that whether or not Deputy Felix could have done that, whether or not she could have made the decision to confine, it doesn't matter. The simple decision is whether or not the elements of the offense itself were present, and there's no dispute here that they are. That's not what the appellants are arguing. They're not telling us that you never could have found that there was a violation of any of these vehicle code provisions under California law for such and such reason. They've not said that at all. They've solely said the fact that there was, that you could not arrest based on that violation under California law, that that controls. And I think, as you yourself noted, Your Honor, in Moore, that arrest, it was in violation of state law. Sure. It could not have been made. Yeah. Could not have been made. Well, it was made, and that was the key distinction. There was an actual arrest for the infraction, which was improper under state law, and Justice Scalia said, for purposes of the Fourth Amendment, we disregard the state law. But here, there was no arrest. There was no arrest. The person ended up going to jail for four days based upon what they said was a false arrest for the drug charge. The infraction was over, and the officer had already decided not to arrest for that infraction. Understood, Your Honor. I'm sorry. But isn't the rationale of Atwater and Virginia versus Moore, the focus is on whether or not an offense has been committed under the law, not whether or not it can be an arrestable offense, but whether or not under the law of the state, there has been an offense committed and whether or not there was probable cause in the officer's mind to believe that an offense had been committed? Your Honor, that's how I've understood the cases, and that's how I've tried to frame my argument, and I believe that's been the county's position from day one. And I think, as you folks have noted, we get some very peculiar results if we adopt the position that the appellants are advancing. Under the reading of the law that the appellants have taken, a Deputy Felix, any deputy, would be far more motivated to arrest on the basis of an infraction or for an offense which under state law doesn't permit arrest solely to protect themselves from a subsequent Fourth Amendment claim as we have here. And one other thing that I would like to note, that the federal court's concerns when they're considering the Fourth Amendment, which I think have been established in the Supreme Court's precedents, that does not deprive persons such as appellants from a remedy under state law, which doesn't concern itself with Fourth Amendment jurisprudence, a simple common law claim for false arrest. So we're not talking about a situation where we're going to have a rash of situations where persons who believe that they have been wrongfully confined or arrested pursuant to state law are left with no remedy. That's not what is being confronted, that's not what this court is being confronted with today. What we're really being confronted with are the implications and the consequences upon National Fourth Amendment jurisprudence if we adopt the appellant's position. So you're saying that they could have had a separate count for common law false arrest, which they didn't have in this complaint? That's correct, Your Honor. Your Honor, unless the panel has any further questions of me, I don't know that there's any more I wanted to address. I appreciate very much your time. All right. Thank you, counsel. We'll give you one minute for rebuttal, counsel. And I'll try to speak quickly. On the malicious prosecution element, the fact that there was an element of equal argument for why the jury can't be found to have decided the way he said they could have decided that she planted drugs, but that there was no racial motivation based on that element alone. And therefore, you can't decide on that basis. On this last point, what's interesting, and it goes together with this hypothesizing traffic violations, if they had actually arrested her, she could have sued this officer for that wrongful arrest under state law. And this officer would have been disciplined for violating state law. But she didn't. She did what she's supposed to do. So there is no state law claim. There's no remedy at all. The way they want it is you hypothesize a traffic violation for which you couldn't do it lawfully. And therefore, there's no remedy under state law because they didn't violate state law. They abided by state law. And yet, that prevents us from getting a jury to decide whether this officer planted drugs on this poor young woman and arrested her for no reason, which ultimately was found to be the case. We would submit in terms of the under influence count. And we never get a jury to decide that because the expansion of DevonPAC is so great that it just means that anybody can hypothesize any minor violation and it wipes out any chance to get accountability for police officers for more serious offenses. And we will just submit if you're reading the cases closely, their rationale. There's no policy justification for that result. And that's not what those cases say. It's not what the policies are that they talk about at the Supreme Court level or any other level. And Courtney does in the Tenth Circuit. And I would suggest that that is the rationale that this court should accept. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Ponsor, Rawlinson, Nguyen